DeVORE, J.
*607 Defendant appeals a judgment of conviction for six counts of first-degree sexual abuse committed against the victim, a child under the age of 14. He assigns error to the trial court's denial of his motion in limine to exclude evidence that he had also abused the victim's mother when she was a child. According to defendant, the trial court erred in its assessment of the probative value of that evidence of uncharged misconduct and, consequently, the court erroneously concluded under OEC 403 that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice. As we will explain, the trial court conducted OEC 403 balancing with regard to each of the specific purposes for which the state offered the evidence, and it acted within its discretion to admit the evidence for one of those purposes: that is, to show defendant's sexual purpose in committing the charged acts. Because the evidence was properly admitted for that purpose, any error that the trial court may have committed with regard to admitting the evidence for other purposes was harmless on this record. Accordingly, we affirm.
I. BACKGROUND
Defendant was charged with committing various crimes against D, the minor granddaughter of his ex-wife, when D was roughly between the ages of 6 and 10. Six of the counts alleged first-degree sexual abuse, based on allegations that defendant had, on separate occasions and at different locations, touched D's genitals, breasts, or buttocks, or caused D to touch defendant's genitals. Defendant was also charged with one count of first-degree sodomy involving D.
Before trial, defendant filed a motion in limine to exclude any evidence that, approximately 20 years earlier, defendant had sexually *785 abused D's mother when she was between the ages of 10 and 15. D's mother made that dis-closure to police when reporting defendant's abuse of D. Defendant anticipated that the state would offer evidence that mother "claims that a couple of times each week, every week, [defendant] would digitally penetrate her and make *608 her perform oral sex on him. She said she did not know why this stopped when she was 15."
In addition, there was evidence that defendant had made incriminating statements to an investigating officer to the effect that any misconduct with D's mother had occurred when defendant had been drinking, but that he had not had a drink for the past 20 years. That evidence was the subject of the same motion and an additional motion to suppress, based in part on the fact that the officer had failed to record the statements; the court denied that additional motion, and it is not at issue on appeal.
In his motion in limine , defendant framed his arguments about the statements of D's mother in light of the Supreme Court's then-recent decision in State v. Williams , 357 Or. 1, 346 P.3d 455 (2015), which addressed the admission of evidence of prior bad acts in a child sexual abuse case. Defendant acknowledged that Williams held that "other act evidence is admissible to prove propensity or character in child sexual abuse cases," but argued that the evidence was still subject to balancing under OEC 403. Defendant took the position, in light of Williams , that evidence of his abuse of D's mother was "not relevant. However, should the court find that the evidence is relevant that relevancy is limited to the prior acts amounting to propensity evidence and is not admissible at trial under OEC 403."
In response, the state argued that the evidence was admissible on multiple theories. First, the prosecutor explained that it was relevant on a propensity theory, which was similar to that described in Williams , that defendant had a sexual interest in family members who are children, from which the jury could infer that he acted with a sexual purpose toward D. Second, based on statements defendant made to the investigating officer, the prosecutor anticipated that one of the defenses at trial might be "that if there was any type of conduct, it was misconstrued, it was accidental type of touching," so that "whether or not the defendant acted with a sexual purpose is going to be a central issue in this case." Therefore, the prosecutor argued, the evidence was admissible "to show the defendant's *609 intent, absence of mistake under the doctrine of chances theory."[1] And, third, the prosecutor argued that the evidence was relevant to "explain people's conduct." Specifically, the evidence explained the fact that, at various times over the years, D's mother had asked D whether she had been abused by defendant. According to the prosecutor, without the evidence that D's mother had been abused herself by defendant, the jury would wonder why she was asking about the abuse and whether she had coached D or implanted memories. The prosecutor argued, the probative value of the evidence on those various theories was not substantially outweighed by the danger of unfair prejudice to defendant.
The trial court largely agreed with the state, and it issued a detailed letter opinion to explain its reasoning with regard to each of the three theories of relevance. The court began its analysis by addressing the state's propensity argument based on Williams . The court concluded that the evidence was relevant under Williams to demonstrate that defendant acted with a sexual purpose: "[A] jury could reasonably infer that defendant's prior abuse of [D's mother] indicates defendant has a sexual interest in children and that defendant acted from that interest when he touched the child victim in this case. Such evidence, which has a tendency to make it more probable that defendant had a sexual purpose when he committed the charged act, is logically relevant under OEC 401."
*786 The court then turned to the issue of OEC 403 balancing. In conducting its balancing, the court considered the five factors set forth in United States v. LeMay , 260 F.3d 1018 (9th Cir. 2001), which had been cited by the Supreme Court in Williams . Those factors were the similarity of the prior acts to the acts charged, the closeness in time of the prior acts to the acts charged, the frequency of the prior acts, the presence or lack of intervening circumstances, and the need for the evidence in light of other testimony at trial.
*610 Based on its analysis of those five factors, the trial court concluded that the probative value of the evidence to show defendant's sexual purpose outweighed the danger of unfair prejudice.
After concluding that the evidence was admissible on that propensity theory, the court addressed whether the evidence was also relevant to prove intent under the analysis set forth in State v. Johns , 301 Or. 535, 725 P.2d 312 (1986). The court reasoned that the evidence met each of the first five Johns criteria (the present charge required proof of intent; the prior acts required the same mental state as the present charge; the victim in the prior act was the same victim or in the same class of victim; the type of act was the same or similar; and the physical elements of the prior act and the present act were similar). The court then considered additional factors set forth in Johns related to OEC 403 balancing and concluded that the probative value of the evidence to show intent was not substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, undue delay, or presentation of cumulative evidence.
Finally, the court agreed with the state's contention that the evidence was admissible "to explain witness behavior." The court ruled that, "[f]or the jury to fairly assess the credibility of [D] and to assess what occurred between her and the defendant, the jury needs to have a full understanding of the relationship between her mother and the defendant."
At trial, D's mother testified as anticipated. She testified that defendant had abused her when she was about 10 years old, including penetrating her vagina with his finger and performing oral sex on her, and that it lasted until she was around 15. Shortly after she testified, and again at the close of evidence, the court instructed the jury regarding its consideration of the evidence of uncharged misconduct. The court's jury instructions tracked its ruling on the motion in limine , limiting the jury's consideration of the evidence to the three purposes identified in that ruling. Moreover, the jury was instructed to consider the evidence for those *611 purposes only after determining that defendant subjected D to the alleged contact.[2]
The jury returned a guilty verdict on six counts of first-degree sexual abuse against D, and it found defendant not guilty of the sodomy charge. The court entered a judgment of conviction on the six counts of sexual abuse, which defendant appeals.
*787 II. ANALYSIS
On appeal, defendant argues that the trial court erred in denying his motion in limine . He contends that the evidence was not relevant for any of the three theories for which it was offered-to show sexual purpose, intent under the doctrine of chances, or to explain witness behavior. He further argues that, to the extent the court erroneously assessed the relevance of any of those theories, we must reverse under the Supreme Court's decision in State v. Baughman , 361 Or. 386, 410, 393 P.3d 1132 (2017), because "an error in assessing the relevant purposes for the evidence significantly affects the trial court's decision under OEC 403." For the reasons that follow, we are not persuaded that defendant has demonstrated reversible error with regard to the denial of his motion in limine .
*612 A. Admissibility to Show Sexual Purpose
1. Relevancy
As a threshold matter, the trial court correctly ruled that defendant's past abuse of D's mother was relevant to show defendant's "sexual purpose" toward D. See State v. Pitt , 352 Or. 566, 576, 293 P.3d 1002 (2012) (a determination that evidence is relevant is reviewed for errors of law). Williams is squarely on point. In that case, "the state was required to prove that defendant had acted with a sexual desire that was aroused or gratified by contact with children." 357 Or. at 23, 346 P.3d 455. The court explained that, "[b]ecause most adults do not have such a desire, the state was entitled to prove that defendant is an adult who does. The fact that defendant has a sexual interest in children would not, alone, establish that defendant acted on that interest in the charged circumstances, but it is a fact that is logically relevant to that issue." Id.
Here, too, the state was required to prove that defendant acted with a sexual desire that was aroused or gratified by contact with a child. See ORS 163.427(1)(a) (first-degree sexual abuse requires proof that defendant subjected the victim, a person under the age of 14, to "sexual contact"); ORS 163.305(6) (defining "sexual contact" as "any touching of the sexual or other intimate parts * * * for the purpose of arousing or gratifying the sexual desire of either party"). The fact that defendant previously exhibited a sexual interest in another child is logically relevant to that issue. A jury could infer from evidence of defendant's abuse of D's mother that defendant had a sexual interest in children generally, and it could take that interest into account when determining if defendant acted on that interest with regard to the charged offenses. See Williams , 357 Or. at 23, 346 P.3d 455.
Defendant's efforts to distinguish Williams on the issue of relevance are not persuasive. First, he argues that "the prior acts against [D's mother] are not probative on that point [sexual purpose], because unlike in Williams , defendant contests that he committed the acts against [D's mother]." But defendant does not explain, nor is it readily apparent, why a defendant's denial of the prior acts would *613 necessarily change the relevance determination under Williams -particularly where the trial court was presented with ample competing evidence that the sexual contact occurred, including an officer's testimony that defendant previously admitted inappropriate contact with D's mother.[3]
Defendant's other argument is that the "abuse of [D's mother] allegedly continued until [she] was 15 years old. One cannot infer a sexual interest in eight to nine year old children from that act." That argument merits almost no discussion. Evidence of sexual abuse of a victim that begins around the age of 10-even if it continues into teenage years-is probative of a sexual interest in eight- or nine-year-old children for purposes of Williams .
2. OEC 403 balancing
Because we agree with the trial court's conclusion that the challenged evidence was relevant to defendant's "sexual purpose" in committing the charged offenses against D, *788 the next question is whether the trial court acted within its discretion in determining that the probative value of the evidence for that purpose was not substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, undue delay, or presentation of cumulative evidence. See Williams , 357 Or. at 20, 346 P.3d 455 (explaining that, after the enactment of OEC 404(4), "in a prosecution for child sexual abuse, the admission of 'other acts' evidence to prove character and propensity under OEC 404(4) depends on whether the risk of unfair prejudice outweighs the probative value of the evidence under OEC 403"); State v. Langley , 363 Or. 482, 515, 424 P.3d 688 (2018) (a trial court's balancing under OEC 403 is reviewed for abuse of discretion).
In State v. Mayfield , 302 Or. 631, 645, 733 P.2d 438 (1987), the court described the process that courts should employ when assessing uncharged misconduct evidence under OEC 403 :
"In making this decision under OEC 403, the judge should engage in four steps. First, the trial judge should *614 assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."
The quantum of probative value of evidence refers to the "measure of persuasiveness that attaches to a piece of evidence." State v. Lawson , 352 Or. 724, 757, 291 P.3d 673 (2012). Or, "[p]ut another way, it is the strength of the relationship between the proffered evidence and the proposition sought to be proved." State v. Sewell , 257 Or. App. 462, 469, 307 P.3d 464, rev. den. , 354 Or. 389, 315 P.3d 420 (2013) (citations and internal quotation marks omitted); see also State v. Anderson , 363 Or. 392, 423 P.3d 43 (2018) ("The probative value of evidence is a function of two variables: the degree to which evidence is relevant to prove or disprove an issue and the extent to which that issue is material to the resolution of the case.").
On the other side of the scale, "[t]he critical inquiry in determining whether evidence is unfairly prejudicial is whether the evidence improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact." Sewell , 257 Or. App. at 469, 307 P.3d 464 (citations and internal quotation marks omitted). "Other acts" evidence, in particular, has the capacity " 'to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.' " Baughman , 361 Or. at 402-03, 393 P.3d 1132 (quoting Old Chief v. United States , 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) ). For that reason,
"when 'other acts' evidence goes only to character and there are no permissible inferences the jury may draw from it, it is more likely that the evidence will be excluded. Such evidence generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly *615 that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial."
Williams , 357 Or. at 20, 346 P.3d 455 (some internal quotation marks omitted; emphasis in original).
In Williams , the court observed that this balancing determination "must be made on a case-by-case basis," and it cited the Ninth Circuit's decision in LeMay , 260 F.3d at 1028, as an example of a case setting out a "list of nonexclusive factors that trial courts may consider in weighing the risk of prejudice presented by 'other acts' evidence offered under" Federal Rules of Evidence 413 and 414 -rules that allow for the admission *789 of evidence of prior sexual assaults or child molestation in cases in which the defendant is accused of those crimes.[4] Williams , 357 Or. at 20, 346 P.3d 455.
LeMay is one of the seminal cases on the question of FRE 403 balancing in the context of prior acts of sexual abuse. LeMay , drawing on earlier cases from the Ninth and Fifth Circuits, explained:
" Rule 403 provides that relevant evidence may be excluded, among other reasons, if 'its probative value is substantially outweighed by the danger of unfair prejudice.' FRE 403. In [ Doe by Glanzer v. Glanzer , 232 F.3d 1258, 1268 (9th Cir. 2000) ], we stated that '[b]ecause of the inherent strength of the evidence that is covered by [ Rule 414 ], when putting this type of evidence through the [ Rule 403 ] microscope, a court should pay "careful attention to both the significant probative value and the strong prejudicial qualities" of that evidence.' Glanzer , 232 F.3d at 1268 (quoting United States v. Guardia , 135 F.3d 1326, 1330 (10th Cir. 1998) ). We also articulated several factors that district judges must evaluate in determining whether to admit evidence of a defendant's prior acts of sexual misconduct. These factors are: (1) 'the similarity of the prior acts to the acts charged,' (2) the 'closeness in time of the prior acts to the acts charged,' (3) 'the frequency of the prior acts,'
*616 (4) the 'presence or lack of intervening circumstances,' and (5) 'the necessity of the evidence beyond the testimonies already offered at trial.' Id. We also stated that this list of factors is not exclusive, and that district judges should consider other factors relevant to individual cases . Id. "
260 F.3d at 1027-28 (brackets in original; emphasis added).
Some circuit courts have since criticized LeMay as being too rigid, to the extent that it sets forth a list of factors that must be considered by trial courts. See United States v. Hawpetoss , 478 F.3d 820, 825-26 (7th Cir. 2007) ; see also United States v. Kelly , 510 F.3d 433, 437 n. 3 (4th Cir. 2007), cert. den. , 552 U.S. 1329, 128 S.Ct. 1917, 170 L.Ed.2d 778 (2008) (noting a circuit split on "whether a district court must address these or other specific factors and make findings," and suggesting that "the Seventh Circuit's more flexible approach seems preferable"). However, even the Seventh Circuit has recognized that "the factors articulated in LeMay are certainly a helpful guide for a district court in making the discretionary determination on the admissibility of such evidence." Hawpetoss , 478 F.3d at 825.
We conclude that the nonexclusive list of factors articulated in LeMay under FRE 403 provides a helpful guide for trial courts applying OEC 403 to balance the probative value and unfair prejudice of other acts evidence in a child sexual abuse case. The factors assist a trial court in carrying out the steps described in Mayfield : They inform an assessment of the probative value of and proponent's need for the uncharged misconduct evidence, as well as the determination of how prejudicial that evidence is. The first four factors-similarity of the prior acts and charged acts, the closeness in time, the frequency of the prior acts, and the presence or lack of intervening circumstances-bear on the measure of persuasiveness and potential prejudice of the evidence, and the fifth factor directly addresses the proponent's need for the evidence.
In this case, the trial court provided a thorough explanation of its analysis under the LeMay factors:
"1. The similarity of the prior acts to the acts charged. Similarities include: age, location, access, and relation: Both *617 [D's mother and D] were pre-teens at the time of their alleged abuse, both endured the abuse in the defendant's home, were allegedly abused when defendant was acting as their care provider and was in a position of *790 authority and trust, and both were young relatives of defendant. Differences include: acts performed, alcohol, threats, and age difference. [D's mother] alleges defendant had her perform oral sex on him while [D] alleges he performed oral sex on her. Defendant stated that his actions with [D's mother] happened at a time when he was drinking. [D's mother] made no allegations of threats while [D] did. [D's mother] was between ten and fifteen years old at the time of the alleged abuse while [D] was between five and six. Despite these differences, the court finds the acts are sufficiently similar that this factor weighs in favor of the other act evidence being more probative than prejudicial.
"2. The closeness in time of the prior acts to the acts charged. The acts occurred at least twelve years apart. In LeMay , the court noted 'the lapse of twelve years does not render the decision to admit relevant evidence of similar prior acts an abuse of discretion.' Id. at 1029, citing United States v. Rude , 88 F.3d 1538, 1550 (9th Cir. 1996). The court finds this factor still weighs in favor of the probative value of the other act evidence.
"3. The frequency of the prior acts. Both [D's mother and D] allege the abuse was ongoing and happened with regularity. The court finds this factor weighs in favor of the other act evidence being more probative than prejudicial.
"4. The presence or lack of intervening circumstances. There are no intervening circumstances. Other than the fact that the alleged abuse ended when she was 15, there is no evidence as to why the alleged abuse of [D's mother] stopped.
"5. The necessity of the evidence beyond the testimonies already offered at trial. There is no physical evidence in this case. The state's case rests on the testimony of eleven year old [D]. The defendant's statements will likely be contested because the officer failed to record them and the court is willing to give a jury instruction regarding best evidence and the statutory requirement to record the defendant's statements. The state further anticipates the defense will allege [D] has been coached and fabricated the allegations. The court finds there is a great need for the *618 other act evidence and this factor weighs in favor of the evidence being more probative than prejudicial.
"Based on these factors, the court finds the admission of defendant's propensity evidence is more probative than prejudicial under OEC 403."
In challenging that ruling, defendant argues that the trial court overstated the probative value of the evidence and "erroneously discounted" the unfair prejudice to defendant from defending against allegations from the distant past. Specifically, he argues that the probative value of the evidence was nonexistent because defendant contested that he committed abuse against D's mother and because of the age differences between D's mother and D at the time of the abuse. As we explained previously with regard to the threshold relevance determination, 295 Or. App. at 612-13, 435 P.3d at 787-88, those arguments are unpersuasive. The trial court's assessment of the quantum of probative value was consistent with evidence and reason: The prior acts and the charged acts were not identical-there were differences in the circumstances of the sexual abuse, as the trial court observed-but they were similar enough to demonstrate that defendant had a sexual interest in children who were relatives, and repeated enough to show that the prior abuse was not accidental or misunderstood but was intentionally undertaken for defendant's sexual gratification. For those reasons, the evidence had cognizable probative value on an element of the charged offenses, as distinct from the types of propensity inferences that have little or no probative value in establishing a material fact. See Williams , 357 Or. at 20, 346 P.3d 455 (describing the "spectrum" of probative value with nonpropensity purposes at one end and, at the other, evidence that "goes only to character and there are no permissible inferences the jury may draw from it " (emphasis altered) ); id. at 23, 346 P.3d 455 (stating that there is a "slim but distinct difference between using the underwear evidence to establish defendant's character and propensity *791 to act accordingly, and offering that evidence to establish defendant's sexual purpose").[5] *619 With regard to prejudice, defendant argues that the uncharged misconduct involved acts that occurred more than a decade before the charged acts and required defendant to defend against both sets of allegations in equal measure. The trial court did not "erroneously discount" that prejudice. The court took the remoteness of the conduct into account but concluded that the events were not so remote as to weigh in favor of exclusion. It is apparent from the trial court's reliance on Williams and LeMay that the court appreciated the dangers inherent in requiring a defendant to defend against past, uncharged misconduct. The court simply disagreed with defendant that the prejudice to him substantially outweighed the probative value of the evidence, in light of the state's need for that evidence.
With regard to that third step of the analysis-balancing in light of the proponent's need for the evidence-defendant argues that the state had little need, as opposed to the "great need" described by the trial court, because "defendant's commission of the charged acts is stronger evidence of defendant's sexual purpose than the fact that *620 he had sexual contact with a different person at a different time." Defendant's characterization of the state's need for the evidence is reasonable; but it is not the only reasonable characterization. The trial court's conclusion was likewise based on reason and evidence. Under the particular circumstances of the case, the state had a particularly acute need for the evidence of sexual purpose because there was no physical evidence, defendant was likely to contest the officer's testimony about defendant's admissions due to a problem recording the police interview, and D's mother's conduct raised questions as to whether she had coached D or fabricated the allegations of other charged acts.[6]
For all of those reasons, we conclude that the trial court's decision to admit the evidence to show sexual purpose-even if different from how this court might ultimately have resolved the balancing question in the first instance-represents a permissible exercise of the court's discretion under the totality of the circumstances in this case. See *792 Sewell , 257 Or. App. at 468-69, 307 P.3d 464 (explaining that we "generally defer to the trial court's decision regarding whether the probative value of the evidence is substantially outweighed by the potential for prejudice," unless the court "exercises its discretion to an end not justified by, and clearly against, evidence and reason" (citations and internal quotation marks omitted) ).[7] *621 We affirm the trial court's ruling regarding the admissibility of the evidence to show sexual purpose notwithstanding any error that the trial court may have committed in assessing the probative value of the evidence for the state's other proffered purposes. Defendant is correct that a trial court's error in assessing the probative value of evidence on one theory can significantly affect the court's balancing under OEC 403, where the court has considered the probative value of all theories collectively . See, e.g. , Baughman , 361 Or. at 409, 393 P.3d 1132 ("When a trial court errs in determining that other acts evidence is relevant for a nonpropensity purpose, that decision necessarily affects the trial court's weighing and admission of that evidence, and we, as an appellate court, can consider the effect of that evidence and whether its admission was harmless."). However, that is not the case here, where the trial court engaged in an independent analysis of admissibility for the purpose of proving sexual purpose, including a separate balancing of the probative value with regard to that theory alone. Nothing in Baughman or other controlling case law precludes a trial court from undertaking that type of purpose-specific analysis under OEC 403.
B. Other Theories of Admissibility
Having concluded that the prior acts evidence was admissible to show defendant's sexual purpose in committing the charged acts against D, we turn to defendant's contention that the trial court erroneously admitted the evidence on two other theories: (1) to show intent under the doctrine of chances and (2) to explain the conduct of other witnesses. Assuming, for the sake of argument, that the trial court erred in the ways defendant contends, those errors had little likelihood of affecting the jury's verdict and provide no basis on which to overturn defendant's convictions. State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003).
1. Admissibility under doctrine of chances
The doctrine of chances rests on the "proposition that multiple instances of similar conduct are unlikely to occur *622 accidentally." Baughman , 361 Or. at 407, 393 P.3d 1132. The doctrine relates only to proof of a defendant's mental state: "It is important to emphasize that the doctrine of chances applies only to explain whether or not an act that a defendant performed was performed intentionally. It does not apply when there is a dispute about whether the defendant performed the act at all." State v. Tena , 362 Or. 514, 524, 412 P.3d 175 (2018).
In this case, the court concluded that the prior act evidence was admissible on that theory and instructed the jury that it could consider the evidence of past abuse to determine defendant's intent. The prosecutor, relying on that instruction, argued that "you'll receive an instruction on this, you can also consider the defendant's prior conduct. You can also consider that to determine, did he act with intent or was this a mistake."
*793 Although the jury was instructed that it could use the prior act evidence both for "sexual purpose" and "intent," we do not perceive any practical difference in how the jury would have employed that evidence for those purposes, particularly in light of the court's instruction that the jury must first decide whether or not defendant subjected D to sexual contact. If the jury used the evidence of past abuse to conclude that defendant engaged in that contact with D for the purpose of his own sexual gratification, then the jury necessarily would conclude that he acted intentionally and not accidentally. Thus, in light of our conclusion that the evidence was properly admitted to show defendant's sexual purpose, we fail to see how also admitting the evidence to show "intent" under the doctrine of chances would have had any tendency to affect the jury's verdict.[8] See Davis , 336 Or. at 32, 77 P.3d 1111.
*623 2. Admissibility to explain witness behavior
Finally, defendant argues that the court erred by admitting the evidence to explain witness behavior. As described above, the state anticipated that defendant would argue that D's mother had coached her or implanted memories, because D's mother had asked D over the years about whether defendant had abused her. The state argued that, "without that information [about defendant's abuse of D] coming out at trial, I think it's not going to make sense to people and they're going to wonder, you know, why is she asking these questions, is she trying to coach the child or, you know, implant some memory," and that "it's going to be important for the jury to have the full understanding and [D's mother] is going to have to talk about * * * why she was doing that." The trial court agreed, ruling that
"the other acts evidence is admissible under State v. Hall , 108 Or. App. 12, 17, 814 P.2d 172, rev. den. , 312 Or. 151 [817 P.2d 758] (1991), and State v. Zybach , 308 Or. 96, 100, 775 P.2d 318 (1989) to explain witness behavior. For the jury to fairly assess the credibility of [D] and to assess what occurred between her and the defendant, the jury needs to have a full understanding of the relationship between her mother and the defendant."
On appeal, defendant argues that the court erred in admitting the evidence for that purpose because defendant's sexual abuse of D's mother "did nothing to explain the dynamics" of the relationship. According to defendant, "[t]o explain why [D's mother] frequently asked [D] whether anyone had touched her inappropriately, it did not matter who had sexually abused [D's mother] in the past. The important point was that [D's mother] asked, and [D] answered yes." (Emphasis by defendant.)
Defendant's argument on appeal rests on a mistaken premise: The evidence was not merely offered to explain why D's mother asked her if anyone had abused her; it was offered to explain why D's mother asked whether defendant abused her. At the hearing on the motion in limine , defendant's counsel stated, "[I]f I understood the State correctly, the explanation of the prior sexual abuse allegation against [D's mother] explains [her] behavior in continuing to *624 question the complainant here about whether any abuse was occurring between her and [defendant] ." (Emphasis added.) With that broader purpose in mind, we agree with the trial court that the evidence of defendant's past abuse was relevant to explain why D's mother would have asked D about prior abuse and to give context for D's mother's motives and behavior. *794 To the extent that defendant argues that, under OEC 403, the court nevertheless should have excluded that evidence or the details of the evidence, we conclude that any error in that respect is harmless in light of our conclusion that the evidence was properly admitted to show sexual purpose. Defendant's primary argument in that regard, which echoes his relevancy contention, is that the jury did not need to know who abused D's mother and that the court "could have limited the admission of the evidence to a generalized statement from [D's mother] that she had experienced sexual abuse when she was 10 to 15 years old." However, given that the nature of the abuse and defendant's identity as the abuser were otherwise admissible to show sexual purpose, any failure to sanitize the evidence for purposes of explaining witness behavior was harmless on this record.
III. CONCLUSION
The trial court acted within its discretion to admit the evidence of defendant's abuse of D's mother for the purpose of showing that defendant acted with a sexual purpose with respect to the charged offenses. Any error that the trial court may have committed with regard to admitting the evidence for other purposes was harmless on this record.
Affirmed.

According to the officer, before admitting to touching D sexually, defendant had "said that maybe some inappropriate touching happened during one of the times he was moving" D from one leg to the other when she was sitting on his lap, and that "he rests his hands there on her butt, and then when he wrestled with her, he also mentioned that he would put one hand in her crotch and one hand on her breasts to lift her up in the air."

The instruction at the close of evidence stated:
"Prior acts evidence. You heard evidence regarding prior actions of the defendant. In this case the State alleges that [defendant] touched a sexually intimate part of [D] for a sexual purpose and subjected her to deviate sexual intercourse. The testimony presented with regards to defendant's prior actions may be considered by you, the jury, for a limited purpose. Before considering the evidence of the defendant's prior actions, the jury must first decide whether or not [defendant] subjected [D] to sexual contact by touching an intimate part of her or causing her to touch a sexual part of him, or by engaging in deviant sexual intercourse with her. If you decide the defendant subjected her to sexual contact or deviant sexual intercourse, then and only then ma[y] the jury consider evidence of [defendant's] past in deciding whether or not [defendant] acted intentionally or with a sexual purpose, or to explain witness behavior. The evidence of [defendant's] prior acts may only be used for the limited purpose of its bearing, if any, [on] the defendant's intent or whether he acted with a sexual purpose and to explain witness behavior. The prior acts evidence is not by itself sufficient to prove that the defendant committed the act alleged in this case. The defendant is not on trial for any of the acts described by [D's mother] and the defendant denies the accusations made by [D's mother]. Let me remind the jury that the State continues to bear the burden of proof of each and every element of the offense charged and to prove said elements of each charge beyond a reasonable doubt."

We understand defendant's contention regarding the contested nature of the evidence to relate primarily to the quantum of probative value for purposes of OEC 403 balancing, which we address later in this opinion.

FRE 413(a) provides, "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." FRE 414(a) provides, "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."

We acknowledge that the court's description of the balancing "spectrum" in Williams is ambiguous as to where "other acts" evidence of "sexual purpose" falls. Williams states:
"When a party objects, under OEC 403, to 'other acts' evidence offered under OEC 404(4), a trial court must engage in the balancing anticipated by OEC 403. At one end of the spectrum, 'other acts' evidence that is offered for nonpropensity purposes-i.e. , to prove motive, intent, identity, or lack of mistake or accident-generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of the evidence. [State v. Shaw , 338 Or. 586, 614-15, 113 P.3d 898 (2005) ]. At the other end of the spectrum, as the state recognizes, when 'other acts' evidence 'goes only to character and there are no permissible inferences the jury may draw from it,' it is more likely that the evidence will be excluded. Such evidence generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial."
357 Or. at 19-20, 346 P.3d 455 (emphasis in Williams ). The phrase "goes only to character and there are no permissible inferences the jury may draw from it" could be read to include propensity inferences of "sexual purpose," or it could be read to refer to cases in which the evidence is offered only to show the character of the defendant. We understand it to be the latter. The phrase "no permissible inferences can be drawn from it" derives from Leavitt v. Arave , 383 F.3d 809, 829 (9th Cir. 2004), cert. den. , 545 U.S. 1105, 125 S.Ct. 2540, 162 L.Ed.2d 277 (2005), and other Ninth Circuit case law. See Williams , 357 Or. at 7, 346 P.3d 455 (quoting Leavitt ). Those Ninth Circuit cases were describing cases in which "other-act evidence is irrelevant and may violate the due process clause." Leavitt , 383 F.3d at 829. Williams , however, concludes that prior bad acts have cognizable relevance to show sexual purpose, and that admission of such evidence does not violate the due process clause.

We also note that, during the hearing on the motion in limine , the parties discussed the possibility of a limiting instruction that would restrict the jury's consideration of "other acts" evidence to the specific purposes for which it was admitted, and the court ultimately gave an instruction that required the jury to first find that defendant committed the charged acts before it could consider the evidence of abuse of D's mother. See State v. Brown , 272 Or. App. 424, 432-33, 355 P.3d 216, rev. den. , 358 Or. 145, 363 P.3d 1288 (2015) (explaining that danger of prejudice from "other acts" evidence can be mitigated by the use of proper jury instructions).

Our decision in State v. Mason , 100 Or. App. 240, 785 P.2d 378 (1990), does not compel a different conclusion. In that case, we held that the trial court abused its discretion in admitting testimony from the child victim's mother that defendant had abused her 20 years earlier. Our holding in that case turned, in significant part, on the "staleness" and "relative weakness" of the victim's mother's testimony. Id. at 244-45, 785 P.2d 378 ; id. at 244, 785 P.2d 378 ("The testimony required defendant to defend not only against the uncorroborated claims of an 11-year-old victim but to convince a jury that her mother was not credible and to rebut evidence of alleged abuse that occurred 20 years before. Therefore, the relative strength of the evidence, and its certainty, become critical factors in determining if the unfairly prejudicial effect outweighed the need that the state had for the evidence and its probative value." (Emphasis added.) ). As the court explained in Williams , the balancing determination "must be made on a case-by-case basis," 357 Or. at 20, 346 P.3d 455, and this case presents a different constellation of circumstances from Mason .

In his reply brief, defendant states that any error regarding the doctrine of chances would require reversal because "the other two theories of relevance did not require the admission of the details of the past abuse or the identity of defendant as the abuser." However, defendant's only developed argument on that point relates to whether the details of abuse and identity would be necessary to explain witness behavior ; he does not describe how or why the evidence would have been admitted differently to show sexual purpose as opposed to intent, and we will not endeavor to develop that argument for defendant. Beall Transport Equipment Co. v. Southern Pacific , 186 Or. App. 696, 700 n. 2, 64 P.3d 1193, adh'd to on recons. , 187 Or. App. 472, 68 P.3d 259 (2003) (explaining that we will not speculate as to what a party's argument might be and that it is not "our proper function to make or develop a party's argument when that party has not endeavored to do so itself").