Argued and submitted September 30, 2020, reversed and remanded
May 25, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS ALAN DAVIS, JR.,
*Defendant-Appellant.*

Washington County Circuit Court
C131383CR; A169891

511 P3d 10

Defendant appeals a judgment of conviction for one count of first-degree kidnapping, one count of attempted first-degree sexual abuse, and one count of fourth-degree assault. The trial court ruled that two notes written by defendant were admissible under OEC 404(4) and OEC 403. Both notes described a desire to engage in violent sexual acts, and defendant left the notes on the cars of two strangers. In considering their admissibility, the trial court determined that the notes gave rise to an inference that defendant had "a general interest in violent, nonconsensual sex with women he does not know," and, therefore, were relevant to explain defendant's "purpose or motive" in attacking the victim. On appeal, defendant assigns error to the trial court's ruling that the notes were admissible, arguing that OEC 403 rendered the notes inadmissible because the probative value of the notes was substantially outweighed by the danger of unfair prejudice. *Held*: The Court of Appeals concluded that although the notes written by defendant were probative, it was an abuse of discretion for the trial court to determine under OEC 403 that the probative value of the notes was not substantially outweighed by the danger of unfair prejudice. Consequently, the notes should not have been admitted into evidence.

Reversed and remanded.

James Lee Fun, Jr., Judge.

David O. Ferry, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Lagesen, Chief Judge, and Armstrong, Senior Judge.*

TOOKEY, P. J.

Reversed and remanded.

Armstrong, S. J., dissenting.

_____

* Lagesen, C. J., *vice* Hadlock, J. pro tempore.

**TOOKEY, P. J.**

This case is before us for a second time. In defendant's first appeal, we reversed and remanded the case after determining that certain evidence—*viz*., two notes written by defendant, both describing a desire to engage in violent sexual acts, that defendant left for two strangers—had been erroneously admitted under OEC 404(3), which permits admission of evidence of other crimes, wrongs, or acts for a nonpropensity purpose only.[1] *State v. Davis*, 290 Or App 244, 414 P3d 887 (2018). On remand, the trial court reinstated the original judgment after determining that the notes were admissible under OEC 404(4) and that the probative value of the notes outweighed any unfair prejudice under OEC 403.[2] *See State v. Baughman*, 361 Or 386, 410-11, 393 P3d 1132 (2017) (explaining remand in these circumstances).

On appeal, in his first assignment of error, defendant assigns error to the trial court's ruling on remand that the notes were admissible. He argues, among other points, that the trial court erred under OEC 403 in determining that the probative value of the notes outweighed the substantial risk of unfair prejudice that their admission into evidence created.

We conclude that the trial court abused its discretion when it determined that the probative value of the notes was not substantially outweighed by the danger of unfair prejudice to defendant under OEC 403. Consequently, we reverse the trial court's determination that the notes were admissible and remand. As a result, we need not reach defendant's other assignments of error.

---

[1] OEC 404(3) provides, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[2] OEC 404(4) provides, in part, "In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by" certain rules of evidence, and the state and federal constitutions.

OEC 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

## I.  HISTORICAL AND PROCEDURAL FACTS

A.  *The Notes*

Prior to the event giving rise to the charges against defendant in this case, defendant left handwritten notes on the cars of two female strangers at two different Target store parking lots. One of those notes was left 10 days prior to the event giving rise to the charges against defendant in this case, and the other note was left approximately two months prior to that event. During defendant's first appeal, we explained that the notes described "a desire to engage in violent sexual acts," and more specifically, we explained:

> "The two notes are very similar: Both are written in the second person (using the words 'you' and 'your'), both graphically describe the women's bodies, and both express, in nearly identical terms, a desire to engage in anal inter-course with the women in a way that would cause them pain."

*Davis*, 290 Or App at 246, 248.

It is undisputed that defendant wrote the notes; however, there is no evidence in the record that he ever approached or tried to make physical contact with either woman.

B.  *The Event Giving Rise to Charges Against Defendant and Defendant's Trial*

During defendant's first appeal, we summarized the historical facts leading to the charges against defendant as follows:

> "On December 27, 2012, the victim, M, went for a run near her home. She wore a jacket and jogging pants, and she listened to music while she ran. As she was running down the sidewalk, defendant tackled her from behind, and she blacked out. She could feel defendant 'dragging' her, and when she became fully alert, she was face down in a shallow ditch near the sidewalk. The ditch was next to an area with tall grass, brush, and trees. M was able to flip her body over, and she began to fight defendant, who stood over her and held one of her hands down. Using her other hand, M tried to hit defendant and then shoved two of her fingers into his mouth. At that point, defendant stood up

and ran away. As a result of the attack, M suffered abrasions, cuts, and an injury to her shoulder."

*Id.* at 247.

As a result of that conduct, defendant was charged with one count of first-degree kidnapping, ORS 163.235 (Count 1); one count of attempted first-degree sexual abuse, ORS 163.427, ORS 161.405 (Count 2); and one count of fourth-degree assault, ORS 163.160 (Count 3).

As to the charge of attempted first-degree sexual abuse, Count 2, the state alleged that defendant unlawfully and intentionally attempted to subject M to sexual contact by means of forcible compulsion. ORS 163.427; ORS 161.405. The state's theory with regard to that count was that M had fought defendant off before he could make his sexual purpose unmistakable.

During defendant's trial, the state presented no direct evidence of actual or attempted sexual contact with M, but offered the two notes, described above, that defendant had left on women's cars in Target parking lots. The state argued that the notes were admissible because they were relevant for the purpose of proving "that defendant's motive in attacking M was to subject her to forcible sexual contact." *Davis*, 290 Or App at 248. The state made clear that it "was offering the notes 'solely' to prove defendant's 'intent,'" and characterized the notes as "a clear expression of defendant's intent to sexually assault a female stranger." *Id.*

Defendant responded that the notes were irrelevant under OEC 401, and, in the alternative, that even if the notes had some relevance, any probative value was substantially outweighed by the risk of unfair prejudice under OEC 403. *Id.* at 248-49.

The trial court admitted the notes under OEC 404(3) for what it called "the 'noncharacter purpose' of explaining 'what conscious purpose or what motive, if any, that [defendant] had in engaging in a kidnapping and assault'—in other words, 'to distinguish whether or not the goal was sexual assault or simply a physical assault.'" *Davis*, 290 Or App at 249 (brackets in *Davis*). The trial court instructed the

jury that the notes could be considered only for their relevance to defendant's motive for attacking M:

> "As regards the statements attributed to defendant in [the notes he left for the female strangers], those statements may only be considered for their value, if any, in determining the defendant's motive in committing the alleged crimes.
>
> "These statements may be considered only if the jury has first determined that defendant is, in fact, the person involved in the alleged crimes."

Additionally, during defendant's trial, M testified at trial that she could not identify her attacker, and the state presented DNA evidence connecting defendant to the scene.

Defendant was convicted on all counts, and he appealed the resulting judgment.

C.   *Defendant's First Appeal*

In defendant's first appeal, we held that the court committed reversible error in admitting the notes as "noncharacter evidence" under OEC 404(3). *Id*. at 249, 258. We explained that

> "a crucial difference between permissible motive-based reasoning and a character-based theory of motive is that the former assumes that a motive might exist because *any person* might possess one under those specific circumstances. The tendency to have such a motive is simply *human*; it does not derive from a trait of character specific to the person involved in the trial. By contrast, character-based reasoning is based on inferred behavioral disposition or propensities, and it relies upon a chain of inferences that employs the evidence to establish that the person (1) is more inclined to act or think in a given way than is typical, and (2) is therefore more likely to have acted or thought that way on a particular occasion."

*Id*. at 252-53 (internal quotation marks, citations, and brackets omitted; emphases in *Davis*).

We further explained that the state's theory of admissibility was that defendant "was generally interested in having rough, nonconsensual sex with women he did not know, and that interest logically makes it more likely that

defendant intended to have sexual contact with M, a female stranger, when he attacked her." *Id.* at 254-55 (internal quotation marks omitted). We determined that "the chain of inferences relied upon by the state [to establish the relevance of the notes] necessarily requires character-based reasoning," because unless "one infers from the notes that defendant is more inclined to act or think in a sexually violent way than is typical the notes do not have any tendency to establish defendant's specific intent when he attacked M because nothing about the attack actually confirms that it is connected to the notes or their content." *Id.* at 255 (internal quotation marks and citation omitted). Thus, the notes were not admissible "as noncharacter evidence of 'motive'" under OEC 404(3). *Id.* at 246; *see also State v. Skillicorn*, 367 Or 464, 476, 479 P3d 254 (2021) ("If the proponent's theory of relevance requires the factfinder to employ propensity reasoning, then the trial court cannot admit the evidence based on that theory under OEC 404(3). Evidence is barred by OEC 404(3) if the chain of logical relevance connecting the evidence to the fact it is proffered to prove relies on an inference relating to a person's character or propensities." (Internal quotation marks, brackets, and citation omitted.)).

We remanded the case for the trial court to determine, based on the arguments that the state might put forth at that point, whether the evidence was relevant, and if so, to conduct OEC 403 balancing to determine if it was admissible.

Additionally, during defendant's first appeal, we rejected an argument by the state that any error in admitting the notes was harmless. We explained, with regard to defendant's conviction for attempted first-degree sexual abuse that the notes "were qualitatively different from the rest of the state's evidence, as they were the only evidence of an unquestionably sexual nature relied upon by the state to prove that defendant intended to subject M to sexual contact." *Davis*, 290 Or App at 258. With regard to defendant's convictions for assault and kidnapping, we explained that "we cannot conclude that there was little likelihood of the error affecting the verdict" because "the state also relied on the notes as demonstrating defendant's motive for

committing those crimes, a central issue in the case." *Id.*
Moreover, we explained that the content of the notes was
"extremely graphic and inflammatory." *Id.*

D. *Remand*

On remand, the trial court stated that it understood
that the case had been remanded for it to consider whether
"the notes are admissible as character evidence" and that
that analysis is under OEC 404(4) and OEC 403. The parties
provided written memoranda, and the court held a hearing.

The state, relying on *State v. Williams*, 357 Or 1,
346 P3d 455 (2015), argued that the evidence was relevant
because the notes showed that defendant had a general
interest in violent, nonconsensual sex with female strang-
ers, which logically made it more likely that he intended
to have sexual contact with M, a female stranger, when he
attacked her. The state further contended that the evidence
had at least a tendency to make the existence of a fact of
consequence to the determination of the action—here, defen-
dant's culpable mental state—more probable. The state also
argued that OEC 403 did not require exclusion of the evi-
dence, and that a new trial was not necessary. The state
moved for reinstatement of the original judgment.

Defendant responded that the notes were not admis-
sible under OEC 404(4) "as they lack relevancy to the issues
in this case." Defendant further argued that, even if they
were relevant, the notes should nevertheless be excluded
under OEC 403 because the risk of unfair prejudice sub-
stantially outweighed any probative value of the evidence.

The trial court ruled that the notes evidence was
admissible under OEC 404(4), explaining:

> "It's admissible to explain the defendant's purpose or
> motive for attacking the victim; [it] gives rise to reasonable
> inference, which is a general interest in violent, noncon-
> sensual sex with women he does not know; and relevant to
> explain purpose or motive for the attack.
>
> "There is a general interest in nonconsensual sex with
> females that are strangers, which is probative of whether
> defendant intended to have sexual contact with the victim
> when he attacked her on this occasion. That inference of a

peculiar sexual interest in nonconsensual sex with female strangers is probative of that general interest to prove he was acting in conformity with that interest when he attacked the victim in the instant case."

The court also ruled that the probative value of the notes outweighed any unfair prejudice under OEC 403, and stated that, if there was a new trial, it would give the same limiting instruction regarding the jury's use of the notes that it gave during the initial trial—*e.g.*, the evidence could be considered only for its relevance to defendant's motive for attacking M, and only after the jury "first determined that defendant is, in fact, the person involved in the alleged crimes." It then granted the state's motion to reinstate the judgement.

Defendant again appeals.

## II.  ANALYSIS

As noted above, in this appeal, defendant argues, among other points, that the trial court erred under OEC 403 in determining that the probative value of the notes outweighed the substantial risk of unfair prejudice that they created.[3] In particular, defendant highlights that the notes did not "threaten nonconsensual physical attack" and that defendant did not "engage in any conduct like that described in the notes during the crime charged—he removed no clothing, and touched no sexually intimate parts in any way."

---

[3] On appeal, defendant argues also that "in non-child-sex cases, due process does not permit the introduction of propensity-only evidence merely to prove propensity," a concept that defendant terms "the propensity rule." The Supreme Court "has suggested, but not yet decided, that the federal constitution may, as a matter of law, prohibit the admission of other acts evidence to prove propensity in a criminal case in which the defendant is charged with crimes other than child sexual abuse." *State v. Baughman*, 361 Or 386, 403 n 8, 393 P3d 1132 (2017).

For two reasons, we do not address defendant's due process argument concerning the admission of propensity evidence in non-child-sex abuse cases, which we understand to be premised on the Due Process Clause of the United States Constitution. First, it is unnecessary because we conclude that the trial court erred in its OEC 403 analysis in this case. Second, defendant did not preserve that argument.

We also note that, on appeal, we do not understand defendant to argue that the notes were inadmissible because they were irrelevant. *See* OEC 404(4) (providing that, in criminal actions, "evidence of other crimes, wrongs or acts by the defendant is admissible *if relevant* except as otherwise provided by" certain rules of evidence, and the state and federal constitutions (emphasis added)).

The state disagrees. In the state's view, the trial court properly exercised its discretion to admit the evidence over defendant's OEC 403 objection. In so arguing, the state contends that "the note evidence had a sufficient logical connection to the charged sex offense with the inference it provided of defendant's peculiar sexual interest, which in turn could explain his attack on M (*i.e.*, he intended to subject her to sexual contact)," and that "defendant's repeated acts relating to the notes occurred within a short period prior to the charged offense." The state also posits that the state had a "particularly acute need for the evidence."

"We review for abuse of discretion a trial court's determination under OEC 403 that the probative value of proffered evidence is not substantially outweighed by the danger of unfair prejudice." *State v. Terry*, 309 Or App 459, 461, 482 P3d 105 (2021). "Our role on appeal is to assess whether the trial court's decision falls within the range of legally permissible choices." *State v. Altabef*, 313 Or App 240, 246, 493 P3d 1099 (2021).

As explained below, we conclude the trial court abused its discretion under OEC 403. Although the notes have some probative value, that probative value is substantially outweighed by the danger of unfair prejudice to defendant. Before turning to our analysis of that issue, for context, we think it helpful to provide a brief overview of the operation of OEC 404(3), OEC 404(4), and OEC 403, including the due-process concerns underlying application of OEC 403 with regard to propensity evidence admitted under OEC 404(4).

"OEC 404(3) makes other acts evidence *inadmissible* to prove a defendant's character or propensity to commit the charged crime." *Baughman*, 361 Or at 390-391 (emphasis in original). It provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

OEC 404(3).

OEC 404(4) was enacted after OEC 404(3). "It makes relevant other acts evidence *admissible* in criminal actions, subject to specified exceptions." *Baughman*, 361 Or at 391 (emphasis in original). It provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [OEC 406 through 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

In *Williams*, "the court recognized the conflict between those two rules and held that the 'legislature intended OEC 404(4) to supersede OEC 404(3) in criminal cases,' and to permit the admission of other acts evidence to prove a defendant's propensity to commit a charged crime of sexual abuse." *Baughman*, 361 Or at 391 (quoting *Williams*, 357 Or at 15). The admission of such evidence is, however, "subject to specified evidentiary rules, including OEC 403." *Id.* OEC 403 permits a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. It provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

OEC 403.

Under OEC 403, the "probative value of evidence refers to the 'measure of persuasiveness that attaches to a piece of evidence.'" *State v. Moles*, 295 Or App 606, 614, 435 P3d 782 (2019), *rev'd on other grounds*, 366 Or 549 (2020) (quoting *State v. Lawson*, 352 Or 724, 757, 291 P3d 673 (2012)). Or, "'[p]ut another way, it is the strength of the relationship between the proffered evidence and the proposition

sought to be proved.'" *Id.* (quoting *State v. Sewell*, 257 Or App 462, 469, 307 P3d 464, *rev den*, 354 Or 389 (2013); brackets in *Moles*). "On the other side of the scale, '[t]he critical inquiry in determining whether evidence is unfairly prejudicial is whether the evidence improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact.'" *Id.* (quoting *Sewell*, 257 Or App at 469; brackets in *Moles*). Evidentiary determinations under OEC 403 "must be made on a case-by-case basis." *Williams*, 357 Or at 20.

The Supreme Court has highlighted that balancing under OEC 403 is not "devoid of due process considerations." *Baughman*, 361 Or at 402.[4] Indeed, OEC 403 balancing is required by the Due Process Clause to "ensure that the admission of 'other acts' evidence is not unfairly prejudicial and a violation of 'fundamental concepts of justice.'" *Williams*, 357 Or at 18. Balancing under OEC 403 precludes "the admission of 'concededly relevant evidence' that has the capacity 'to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *Id.* at 402-03 (quoting *Old Chief v. United States*, 519 US 172, 180, 117 SCt 644, 136 L Ed 2d 574 (1997)). And, as we have noted, "other acts" evidence, in particular, "has the capacity 'to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *Moles*, 295 Or App at 614 (quoting *Baughman*, 361 Or at 402-03). Moreover, we have highlighted that "evidence of uncharged sexual misconduct in a prosecution for sex crimes" presents a "due-process-jeopardizing danger of unfair prejudice" and has an "inflammatory nature." *Terry*, 309 Or App at 465. Such evidence is, in other words, particularly pernicious.

Our Supreme Court has also opined on the "numerous harmful effects" of other acts evidence when introduced as propensity evidence, as the notes were in this case. *Skillicorn*, 367 Or at 478. Such evidence can "(1) impair the opposing party's ability to present its case; (2) distract and confuse the factfinder; (3) prejudice the factfinder against

---

[4] Separate and apart from balancing under OEC 403, under OEC 404(4)(d), "trial courts also must exclude evidence, as a matter of law, that would render a trial fundamentally unfair and violate the Due Process Clause." *Baughman*, 361 Or at 402.

a person; and (4) result in verdicts based on erroneous assumptions." *Id*.

The due process concerns regarding the admission of other acts evidence to prove propensity are sufficiently severe that the Oregon Supreme Court has "suggested, but not yet decided, that the federal constitution"—and, specifically, the Due Process Clause—"may, as a matter of law, prohibit the admission of other acts evidence to prove propensity in a criminal case in which the defendant is charged with crimes other than child sexual abuse." *Baughman*, 361 Or at 403 n 8; *see Skillicorn*, 367 Or at 476 n 2 ("[I]n cases involving crimes other than child sexual abuse, the Due Process Clause might prohibit 'the admission of other acts evidence to prove propensity.'" (Quoting *Williams*, 357 Or at 17; some internal quotation marks omitted.)). The admission of other acts evidence in a prosecution for child sexual abuse might be treated differently than the admission of other acts evidence in the prosecution of other crimes under the Due Process Clause due to differences in historical practice. *Williams*, 357 Or at 17 ("If this were a case in which defendant had been charged with crimes other than child sexual abuse, we might be persuaded that due process incorporates that historical practice and therefore not only requires the application of OEC 403, but also precludes the admission of 'other acts' evidence to prove propensity. However, in this case, defendant is charged [with] child sexual abuse, and the historical practice with respect to such charges is not as clear.").

Recognizing the inflammatory nature of uncharged evidence of sexual misconduct in a prosecution for sex crimes, in *United States v. LeMay*, 260 F3d 1018, 1028 (9th Cir 2001), *cert den*, 534 US 1166 (2002), the Ninth Circuit identified five nonexclusive factors to guide a court's exercise of discretion in determining whether to admit such evidence. We have considered such factors in reviewing a trial court's exercise of discretion under OEC 403 in the context of child sexual abuse cases. *Terry*, 309 Or App at 465; *see also Moles*, 295 Or App at 616 (describing the *LeMay* factors as "a helpful guide for trial courts applying OEC 403 to balance the probative value and unfair prejudice of other acts evidence in a child sexual abuse case"). The *LeMay* factors

are "(1) the similarity of the uncharged misconduct; (2) the temporal proximity of the uncharged acts to the charged acts; (3) the frequency of the prior acts; (4) the existence or nonexistence of intervening circumstances; and (5) the need for the evidence in addition to the testimony." *Terry*, 309 Or App at 465.

With that background, we turn our analysis to the question of whether the trial court abused its discretion under OEC 403 when it admitted notes evidence.

We begin by examining the probative value of the notes. As stated above, the trial court admitted the notes under OEC 404(4) to demonstrate that defendant has a "a general interest in violent, nonconsensual sex with women he does not know" and to "explain purpose or motive for the attack." That is, the notes were admitted to show that defendant was "acting in conformity with that interest when he attacked the victim in the instant case."

We agree with the state and the trial court that the notes were relevant to demonstrate that, if defendant attacked the victim, he intended to subject the victim to sexual contact by means of forcible compulsion, which was a fact of consequence in the state's prosecution of defendant. *See* OEC 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); ORS 163.427(1) ("A person commits the crime of sexual abuse in the first degree when that person *** [s]ubjects another person to sexual contact and *** [t]he victim is subjected to forcible compulsion by the actor."); ORS 161.405(1) ("A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."); *see also, e.g.*, *Terry*, 309 Or App at 464-65 (in the context of a prosecution for first-degree sexual abuse of a 15-year-old, concluding that evidence of the defendant's prior conviction for one count of attempted unlawful sexual penetration of a 10-year-old relative and the defendant's statements about attraction to 10- to 13-year-old girls were admissible under OEC 403 and OEC 404(4) to show "defendant had the intent

to touch the victim sexually" and that "it was not, in fact, an accident").

Further, consideration of the *LaMay* factors, as a whole, demonstrate the probative value of the notes on that point.

We first consider the similarity of the uncharged misconduct with the charged conduct. There is, at least on a general level, similarity between what the state sought to prove and the uncharged misconduct: The state's theory was that defendant was attempting to subject M to a violent sexual act when he attacked her and, in the notes, defendant described "a desire to engage in violent sexual acts." *Davis*, 290 Or App at 246. But there is dissimilarity between the conduct described in the notes and the conduct the state sought to prove defendant attempted to engage in: As defendant points out, the notes did not "threaten nonconsensual physical attack" and defendant did not "engage in any conduct like that described in the notes during the crime charged." Moreover, the state's theory of relevance required the factfinder to infer that the notes actually relayed defendant's sexual desires instead of inferring that defendant placed those notes for some other, nonsexual purpose—for example, to harass, threaten, or intimidate. Nevertheless, we think there is a relationship between the proffered evidence (describing a desire to engage in violent sexual acts with strangers) and the proposition sought to be proved (that if defendant was the person who engaged in violent conduct toward M, he did so intending to subject M to sexual contact).

The other *LeMay* factors also suggest the notes had probative value. The temporal proximity of the uncharged acts to the charged acts seemingly militates towards admissibility: The notes were placed just 10 days and two months, respectively, before the charged acts. *Cf. LeMay*, 260 F3d at 1029 ("About eleven years had passed between LeMay's abuse of his nieces and his trial for the abuse of D. R. and A. R. We have held, in the context of Rule 404(b), that the lapse of twelve years does not render the decision to admit relevant evidence of similar prior acts an abuse of discretion."). The frequency of the prior acts factor also, perhaps, militates

towards admissibility. There was evidence that defendant left notes on strangers' cars on two occasions; that is, it was not an "isolated occurrence." *Id.* at 1029. The *LeMay* factor concerning the existence or nonexistence of intervening circumstances does not appear to have relevance here. And, finally, the state had a need for the evidence in addition to the testimony it presented. As we highlighted during defendant's first appeal, the notes were "qualitatively different from the rest of the state's evidence, as they were the only evidence of an unquestionably sexual nature relied upon by the state to prove that defendant intended to subject M to sexual contact." *Davis*, 290 Or App at 258.

Consideration of the *LeMay* factors, as a whole, leads to the conclusion that the notes are, concededly, probative. Nevertheless, particularly in view of the Supreme Court's cautionary words in *Baughman*, 361 Or at 403 n 8—*viz.*, "that the federal constitution may, as a matter of law, prohibit the admission of other acts evidence to prove propensity in a criminal case in which the defendant is charged with crimes other than child sexual abuse"—we conclude that it was an abuse of discretion for the trial court to determine under OEC 403 that the probative value of the notes was not substantially outweighed by the danger of unfair prejudice. That is because, in this case, the notes had the capacity "'to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *Moles*, 295 Or App at 614 (quoting *Baughman*, 361 Or at 402-03).

As we previously observed during defendant's first appeal, "the content of the notes is extremely graphic and inflammatory." *Davis*, 290 Or App at 258. That gives rise to the risk that the jury would convict defendant not because defendant engaged in the charged conduct, but, instead, because the jury believed that defendant *serially* engaged in threatening conduct toward female strangers—something for which he was not on trial in this case. *See, e.g.*, *Terry*, 309 Or App at 465-66 (in the context of a prosecution for first-degree sexual abuse of a 15-year-old, concluding evidence of defendant's "admissions in therapy about becoming aroused when changing his daughter's diaper and touching her vaginal area" was inadmissible under OEC 403 because, among other reasons, "[t]he evidence is highly inflammatory, giving

rise to the risk of the jury convicting not because defendant engaged in the charged conduct but, instead, because he posed a risk to babies—something he was not on trial for in this case"). As noted above, that is one of the problematic features of other acts evidence offered to prove propensity: It can "prejudice the factfinder against a person." *Skillicorn*, 367 Or at 478.

Moreover, as we detailed in defendant's first appeal, the notes evidence provided a motive for all of the charged conduct, which is why we concluded that its admission was not harmless with regard defendant's convictions for assault and kidnapping, notwithstanding the trial court's limiting instruction. We concluded that, given the nature of the evidence, a factfinder would potentially consider the notes evidence not only to determine that, if defendant committed conduct toward M, he did so with an intent to subject her to sexual contact (*i.e.*, the purpose for which the notes were admitted), but also to establish that defendant, in fact, engaged in conduct constituting kidnapping and assault. That is problematic, given the dissimilarity between the conduct of kidnapping and assault, on the one hand, and the act of placing the notes and the conduct described in the notes, on the other. In our view, the notes had the potential to improperly appeal to the "preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish [the] material fact" for which they were admitted in this case. *Moles*, 295 Or App at 614 (internal quotation marks omitted). Or, put another way, here, given the extremely "inflammatory nature" of the notes, we think the uncharged evidence of sexual misconduct presented a "due-process-jeopardizing danger of unfair prejudice." *Terry*, 309 Or App at 465.

Consequently, notwithstanding their probative value, we conclude that the trial court abused its discretion when admitting the notes.[5]

---

[5] The dissent in this case is well written. Like many well-written opinions, it grabs the reader's attention in the very first sentence. It does so by highlighting the graphic and inflammatory language in the two notes left by defendant: "Defendant left notes on the cars of two complete strangers telling them in graphic terms how much he loved their 'bubble-butts' and wanted to engage in anal sex while they 'cry, scream, groan and moan and grunt with pain.'" 319 Or App at 754 (Armstrong, J., dissenting).

## III.   CONCLUSION

As explained above, the other acts evidence in this case undoubtedly had probative value.  However, as also explained above, the probative value of that evidence was substantially outweighed by the danger of unfair prejudice. Consequently, we reverse and remand.

Reversed and remanded.

**ARMSTRONG, S. J.,** dissenting.

Defendant left notes on the cars of two complete strangers telling them in graphic terms how much he loved their "bubble-butts" and wanted to engage in anal sex with them while they "cry, scream, groan and moan and grunt with pain." Then, according to the state, 10 days after he left the second note, he tackled a complete stranger who was jogging and dragged and put her face down in a ditch; the victim was able to flip herself over and fight off defendant. This will be the second time that we have said that the notes left on the cars were erroneously admitted as evidence of what defendant intended to do to the victim when he assaulted her, had she not fought him off. And, in my opinion, we will have been wrong both times.

In our earlier opinion, we reasoned that the state's "motive" or "specific intent" theory for admission of the evidence depended on a propensity inference:

"[T]he chain of inferences relied upon by the state necessarily requires character-based reasoning. *** [T]o conclude that the same motive that drove defendant to leave sexual notes for two female strangers also induced him to sexually assault a third person on a different occasion, one must draw the intermediate inference that the desire expressed in the notes was not personal to the recipients but, rather, was reflective of a general desire for violent sexual gratification. *That inference depends upon the existence of a persistent trait intrinsic to defendant: that defendant has an interest in sexually assaulting any female stranger*

---

But it is that same graphic and inflammatory language that, in our view, causes a danger of unfair prejudice to defendant. Just as that language grabs and haunts a reader, it too might grab and haunt a juror, and "lure [a juror] into declaring guilt on a ground different from proof specific to the offense charged." *Moles*, 295 Or App at 614 (internal quotation marks omitted).

*and that that interest persists in varying situations through-
out life. Thus, the state's theory of relevancy depended upon
character-based reasoning, and the trial court therefore erred
by admitting the evidence for a non-character purpose."*

*State v. Davis*, 290 Or App 244, 255, 414 P3d 887 (2018)
(*Davis I*) (emphasis altered; internal citation and quotation
marks omitted).

In my view, we made that sequence of inferences too
complicated. A jury could infer defendant's intention to make
the victim he dragged face down into the ditch scream from
pain from anal sex not because of a "persistent trait" they
inferred from the notes but because *that's what the notes said
he wanted to do to a stranger*. The notes were direct evidence
that defendant wanted to make a complete stranger "cry,
scream, groan and moan and grunt with pain." The notes
may have been "prior bad acts," but they were also expres-
sions by defendant of exactly what he wanted to do sexually
with strangers around the time that the state claims that
he assaulted a stranger and dragged her face down into a
ditch. *See State v. Turnidge*, 359 Or 364, 452-53, 374 P3d
853 (2016) (holding that the defendant's "anti-establishment
views and, more particularly, his negative views toward law
enforcement," supplied "evidence of his motive for his partic-
ipation in the ultimate explosion that killed and injured law
enforcement officers," and that "[t]he inference that defen-
dant's actions were motivated by his beliefs was a logical one
on this record").

I appreciate that we are bound by our decision in
*Davis I*, which resulted in the notes being treated as "pro-
pensity" evidence and weighed as such on remand. But I
am not willing to compound our original mistake by now
reversing the trial court's rebalancing that it undertook on
remand under OEC 403.

In *State v. Williams*, 357 Or 1, 346 P3d 455 (2015),
our Supreme Court recognized that evidence of a defen-
dant's sexual purpose can have probative value that is dis-
tinct from merely inviting the jury to convict a defendant
based on the defendant's character and propensity to act
accordingly:

"[T]here is a slim but distinct difference between using the underwear evidence to establish defendant's character and propensity to act accordingly, and offering that evidence to establish defendant's sexual purpose. First, in this case, defendant's sexual purpose is an element of the charged crimes. The state did not offer the evidence to establish that defendant committed the charged acts; it offered the evidence to prove an element of the charged crimes— defendant's sexual purpose. *Second, the state was required to prove that defendant had acted with a sexual desire that was aroused or gratified by contact with children. Because most adults do not have such a desire, the state was entitled to prove that defendant is an adult who does. The fact that defendant has a sexual interest in children would not, alone, establish that defendant acted on that interest in the charged circumstances, but it is a fact that is logically relevant to that issue*."

357 Or at 23 (emphasis added).[1]

*Williams* also recognized that, under *Dowling v. United States*, 493 US 342, 352-53, 110 S Ct 668, 107 L Ed 2d 708 (1990), "an evidentiary rule—such as OEC 403—that requires a trial court to determine whether the potential prejudice of 'other acts' evidence outweighs its probative value *is sufficient to safeguard a litigant's due process rights*."

---

[1] In *State v. Cave*, 298 Or App 30, 42 n 9, 445 P3d 364 (2019), we noted that "[w]hether evidence establishing a defendant's sexual purpose toward a child is propensity or nonpropensity evidence is a question that has not yet been resolved by the Supreme Court, and it is the subject of significant confusion," pointing out seemingly inconsistent parts of *Williams*. Later, in *State v. Levasseur*, we determined that the "state's theory of admissibility required the jury to infer from defendant's prior crimes that he has a propensity to assault women for sexual purposes, and that he acted in conformity with that propensity in this case. That is propensity-based reasoning." 309 Or App 745, 753, 483 P3d 1167, *opinion clarified*, 312 Or App 733, 489 P3d 630, *rev den*, 368 Or 788 (2021). For purposes of my analysis, I assume (consistently with *Davis I*) that the notes would be admissible only under OEC 404(4), without wading into the morass of distinctions between character, propensity, and sexual purpose. *Accord State v. Martinez*, 315 Or App 48, 55, 499 P3d 856 (2021) ("[T]he state acknowledges that defendant's abuse of C was 'propensity evidence,' in the sense that 'it was offered to support an intermediate inference that defendant had a sexual interest in children, which in turn was relevant to the jury's determination whether he possessed the requisite culpable mental state for the charged offense.'"); *see generally State v. Jackson*, 368 Or 705, 735, 498 P3d 788 (2021) (Garrett, J., concurring) (pointing out that the Supreme Court "like many others—has used the word 'character' interchangeably with 'propensity.' The two terms have been equated to the point that we have routinely described OEC 404(3) as prohibiting 'propensity evidence,' even though that is not what the rule says.").

357 Or at 17 (emphasis added). *Williams* then described the "spectrum" of balancing that occurs under OEC 403:

> "At one end of the spectrum, 'other acts' evidence that is offered for nonpropensity purposes—*i.e.*, to prove motive, intent, identity, or lack of mistake or accident—generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of the evidence. * * * At the other end of the spectrum, as the state recognizes, when 'other acts' evidence 'goes only to character and there are *no* permissible inferences the jury may draw from it,' it is more likely that the evidence will be excluded. Such evidence generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial."

*Id.* at 19-20 (emphasis in *Williams*).

Although the issues on appeal in *Williams* did not require the court to address the trial court's OEC 403 balancing of the sexual-purpose evidence in that case, the court did cite with approval the Ninth Circuit's decision in *United States v. LeMay*, 260 F3d 1018 (9th Cir 2001). We have since expounded on that citation. *See State v. Moles*, 295 Or App 606, 615, 435 P3d 782, *rev den*, 365 Or 194 (2019), *rev allowed and rev'd in part on other grounds*, 366 Or 549 (2020). In *Moles*, we explained that "*LeMay* is one of the seminal cases on the question of FRE 403 balancing in the context of prior acts of sexual abuse." 295 Or App at 615. *LeMay* identified a number of nonexclusive factors to guide a court's exercise of discretion in determining whether to admit evidence of uncharged sexual misconduct in a prosecution for sex crimes, given the dangers of unfair prejudice that the evidence presents: (1) the similarity of the uncharged misconduct; (2) the temporal proximity of the uncharged acts to the charged acts; (3) the frequency of the prior acts; (4) the existence or nonexistence of intervening circumstances; and (5) the need for the evidence beyond what was otherwise offered. 260 F3d at 1028.

Our decision in *Moles* expressly endorsed those factors as "a helpful guide for trial courts applying OEC 403 to balance the probative value and unfair prejudice of other

acts evidence in a child sexual abuse case." 295 Or App 615. And, we ultimately affirmed the trial court's decision in that case to admit the evidence to show sexual purpose. We appreciated that the court's balancing, "even if different from how this court might ultimately have resolved the balancing question in the first instance—represents a permissible exercise of the court's discretion under the totality of the circumstances in this case." *Id.* at 620; *see also State v. Terry*, 309 Or App 459, 465, 482 P3d 105 (2021) (reaching a similar conclusion).

In my view, in light of *Williams* and our cases applying the *LeMay* factors, the trial court acted well within its permissible range of discretion in determining that the probative value of the notes was not substantially outweighed by the risk of unfair prejudice to defendant. The sexual-purpose theory in this case is not meaningfully distinguishable from the one that *Williams* recognized as having probative value. In *Williams*, the court observed that the state needed to prove that the defendant had acted with a sexual desire toward children and that, "[b]ecause most adults do not have such a desire, the state was entitled to prove that defendant is an adult who does." 357 Or at 23. The same can be said here: The state's theory was that defendant acted on a desire to have forcible anal sex with a complete stranger; because most adults do not have that desire, the state was entitled to prove that defendant is not only someone who has a desire to inflict pain on a complete stranger through anal sex, but that he had explicitly expressed that exact desire in the notes that he had left on the cars of strangers.

The temporal proximity of the notes to the charged act also supports the trial court's decision. The first note was left a few months before the assault; the second was left only 10 days before the assault. Thus, even assuming that the notes did not meet the legal requirements for a *nonpropensity* theory of motive, they had probative value to show defendant's sexual desire to inflict pain on complete strangers— and his lack of any boundaries pursuing that desire—in the same general time frame as the assault of the victim. And there were two notes left at different times, so it was not an isolated occurrence. *See LeMay*, 260 F3d at 1029 ("[T]hat there was evidence of a third similar incident suggests that

LeMay's abuse of his cousins in 1989 was not an isolated occurrence."). Moreover, because the victim fought off defendant, the state had no better way of proving what defendant ultimately intended to do to her, which was a necessary element of the charge of attempted sexual abuse.

In my view, the two notes that defendant left, describing the pain from anal sex that he wanted to cause a complete stranger, are highly probative of what defendant intended when he later tackled a complete stranger and dragged her into a position in the bushes where he could anally sodomize her. That is true whether or not propensity-type inferences are involved in the chain of reasoning, because they are not purely character-based inferences. *See Moles*, 295 Or App at 618 & n 5 (explaining that, for purposes of balancing, sexual-purpose evidence has probative value that is distinct from evidence that "goes only to character and there are no permissible inferences the jury may draw from it" (emphasis omitted)).

Although the majority agrees that the notes had probative value in showing defendant's sexual purpose, it nevertheless concludes that such value was substantially outweighed by the risk that the notes would "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." 319 Or App at 752 (internal quotation marks omitted). But that discounts the role of a limiting instruction in a case like this. In *Terry*, we held that the trial court had not abused its discretion in admitting evidence of defendant's prior conviction for unlawful sexual penetration of a 10-year-old relative, his statement about the circumstances underlying that conviction (including "it's possible my penis touched her. Yes, it's possible my semen could be on her"), and his statement admitting his attraction to 10- to 13-year-old girls. We explained that that potentially inflammatory evidence "could be addressed through a limiting instruction, something the trial court offered, although it appears that no party requested that one be delivered." *Terry*, 309 Or App at 465.

I fail to see why that is not true here. The state sought and the trial court delivered an instruction that the notes "may only be considered for their value, if any,

in determining the defendant's motive in committing the alleged crimes. These statements may be considered only if the jury has first determined that defendant is, in fact, the person involved in the alleged crimes." Again, even assuming that the evidence did not meet the standard for a *nonpropensity* motive theory, it had probative value for determining whether defendant's attack was motivated by a desire to sexually assault the victim; the limiting instruction, as it would have been understood by the jury, reduced the risk that the jurors would use the evidence for a purpose other than that.

Yes, the content of the notes was highly prejudicial, and their admission created some risk that the jury would make a judgment about defendant's character—but more dangerously so than a history of sexually assaulting 10-year-old children, *viz.*, the evidence whose admission we upheld in *Terry*? As the majority notes, our Supreme Court has suggested on multiple occasions that child sexual abuse might somehow be different from other sexual-purpose cases, but the historical underpinnings of that assertion and its logical basis are not entirely clear to me.[2] Until the United States Supreme Court or our Supreme Court announces that bright line rule, I do not see a basis to treat the prejudicial effect of sexual-purpose evidence as categorically different under OEC 403. Here, given the significant probative value of the evidence to show the sexual motive for the attack, as well as the availability of a limiting

---

[2] On that point, it is worth noting that, despite the fact that *Williams* focused on the historical practice as it relates to child sexual abuse, the sources on which *Williams* relied for that proposition, including *LeMay*, are not so limited; they addressed prior sexual misconduct more generally. *See Williams*, 357 Or at 17 n 16 ("In *LeMay*, the court observed that, '[i]n many American jurisdictions*, evidence of a defendant's prior acts of sexual misconduct is commonly admitted in prosecutions for offenses such as rape, incest, adultery*, and child molestation' by 'stretching traditional 404(b) exceptions *to the ban on character evidence or by resorting to the so-called "lustful disposition" exception.' Id.* Accordingly, the court also concluded that ""the history of evidentiary rules regarding *a criminal defendant's sexual propensities is ambiguous at best*, particularly with regard to sexual abuse of children."" *Id.* at 1026 (quoting *United States v. Castillo*, 140 F3d 874, 881 (10th Cir 1998))." (Emphases added.)) And *Williams* itself recognized that the United States Supreme Court has "explicitly reserved the question whether an evidentiary rule would violate due process if it permitted the use of 'prior crimes' evidence to prove a defendant's propensity to commit a charged crime." 357 Or at 16-17 (citing *Estelle v. McGuire*, 502 US 62, 75 n 5, 112 S Ct 475, 116 L Ed 2d 385 (1991)).

instruction that would focus the jury's use of the evidence on that specific issue, I would conclude that the trial court acted within its discretion in ruling that the probative value of the notes, in light of the state's need for the evidence, was not substantially outweighed by a risk of unfair prejudice to defendant. I therefore dissent.[3]

---

[3] Defendant advances additional arguments that I would reject and do not see a benefit to discussing.