536 June 26, 2024 No. 453

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ETHAN GABRIEL GUTIERREZ,
*Defendant-Appellant.*

Jackson County Circuit Court
20CR38106; A179801

Timothy Barnack, Judge.

Submitted April 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for second-degree murder and imposition of a sentence of life imprisonment with the possibility of release after 25 years. On appeal, he raises two assignments of error. First, he asserts that the trial court erred by admitting, over defendant's OEC 403 objection, evidence that defendant possessed a blue box-cutter type of knife about one month before the murder. Defendant contends that the evidence should have been excluded because it had little relevance and had a substantial risk of causing unfair prejudice. Second, defendant contends that the trial court plainly erred by imposing a sentence that was disproportionate under the Oregon and federal constitutions. We affirm.

*OEC 403:* The facts relevant to defendant's claim that the trial court erred in admitting evidence that defendant possessed a blue box-cutter close in time to the murder are not in dispute. Defendant, who was 18, had been drinking in the backyard with his step-brother and another man, R. Defendant and R left together. Later, defendant returned without R. Defendant said that he had gotten into a fight with R. Defendant left again, saying that R had taken his debit card and that he was going to get it back.

A witness, Evans, saw defendant in the vicinity of what would become the crime scene. Evans noticed that defendant had a box-cutter type of knife in his hand. Later, Evans and another man, Tonini, saw defendant appearing to punch someone. Evans yelled for defendant to stop. As Evans and Tonini continued moving toward defendant, they realized that defendant was stabbing the victim, R. R subsequently died of his wounds, which included narrow, deep neck wounds.

When police gathered evidence at the scene of the stabbing, they were unable to find the murder weapon. Evans later described to police the knife he had seen defendant with earlier. Although he could not be sure, Evans thought that the box cutter defendant had was blue. Evans identified for police two images, on a page of several different images of blue box cutters, as depicting the specific

type of box cutter that defendant had that night. A medical examiner concluded that R's wounds were consistent with the kind of box-cutter knife that Evans had identified.

The state charged defendant with second-degree murder. During trial, the state sought to admit evidence that, in an unrelated stop about a month before the murder, police found in defendant's possession a blue box cutter like the ones that Evans had identified. Police did not seize the box cutter during that stop; it was returned to defendant. However, the state had body-camera footage of that encounter, from which it created a still image of the box cutter that it intended to use at trial.

Defendant objected to the evidence under OEC 403, arguing that it was irrelevant or had minimal probative value, but was highly prejudicial. Specifically, defendant contended that the evidence of the knife would invite the jury to speculate that it was the murder weapon. The state argued that the evidence was highly relevant and probative, and not overly prejudicial. It intended to argue that the knife seen in the earlier encounter *was* the murder weapon. The state anticipated that testimony about the victim's autopsy would include an opinion that the victim's wounds were consistent with a box cutter of that type.

The trial court ultimately admitted the evidence, concluding that the probative value outweighed the prejudicial effect. It observed that the evidence was relevant because the knife found a month prior matched the knife identified by Evans, an eyewitness to the attack, and that the probative value was not outweighed by the risk of unfair prejudice.

On appeal, defendant argues that the trial court abused its discretion when it admitted the evidence. *See State v. Langley*, 363 Or 482, 515, 424 P3d 688 (2018), *adh'd to as modified on recons*, 365 Or 418, 446 P3d 542 (2019), *cert den*, 141 S Ct 138 (2020) (reviewing 403 ruling for abuse of discretion). Defendant contends that there was little to no probative value, and that the risk of unfair prejudice was great. He argues that the jury was likely to infer that defendant had previously engaged in misconduct requiring police

intervention. He also argues that the evidence was likely to confuse or mislead the jury because it could "overpersuade" the jury that the box cutter defendant had possessed a month before the murder was the murder weapon.

The trial court did not abuse its discretion. The evidence had probative value that substantially outweighed the slight danger of unfair prejudice. The blue box cutter found in defendant's possession a month before the murder was consistent with the blue box cutter that Evans saw defendant with on the night of the murder. Further, the medical examiner who performed the victim's autopsy was expected to, and ultimately did, testify that the victim's wounds were consistent with a weapon like that type of box cutter. That defendant possessed the blue box cutter a month before the murder put it within the timeframe where it would be reasonable to infer a connection. Thus, the jury could reasonably infer that the blue box cutter from a month earlier was the same as the blue box cutter Evans saw in defendant's hand on the night of the murder. And it could infer that that blue box cutter was the means by which defendant committed the murder. That is, the jury could infer that it was the murder weapon.

Additionally, the state's need for the evidence was substantial. *See State v. Davis*, 319 Or App 737, 752, 511 P3d 10 (2022) (highlighting state's need for evidence in assessing the probative value). The police had not located a murder weapon. Being able to connect what Evans saw on the night of the murder to defendant, showing that he possessed a knife of the type and color that Evans saw that night, supported the state's case. The state presented eyewitness testimony that defendant was seen stabbing R, and that a short time before that, he had possessed a blue box cutter that was of a type that could have caused the victim's wounds. A source independent from Evans showing that defendant possessed that type of box cutter before the murder thus had significant probative value to the state's case.

We disagree with defendant that the evidence carried such a high risk of unfair prejudice that its high probative value was substantially outweighed. To the extent that it carried a risk of unfair prejudice because the jury

might infer that defendant had done something to merit being stopped and searched by the police, any such inference would be vague, as no details were provided. Further, the jury would likely infer that defendant had not been arrested, because the box-cutter was returned to him after the search. The small risk that the jury would infer that defendant had done something to merit being stopped by the police did not substantially outweigh its high probative value.

*Sentencing:* In his second assignment of error, defendant challenges his life sentence with the possibility of release after 25 years. Defendant argues that the trial court plainly erred by imposing that sentence because, as applied to him, it is unlawful under Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. For a claim of error to constitute plain error, the legal point must be obvious and not reasonably in dispute. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006). We cannot say that it is obvious that a life sentence with the possibility of parole after 25 years for a murder is disproportionate under either constitution. The trial court did not plainly err.

Affirmed.